## WEBB v. JACKSON ET AL.

1. ADOPTED CHILDREN, RIGHT OF INHERITANCE.
The right of inheritance of children adopted under a statute is fixed by the act itself.
2. SAME.
By special act of the legislature, which took effect February 11, 1870, Robert A. Moore adopted the plaintiff as his daughter and heir. The act provided that the plaintiff "Mary Adella Moore shall be entitled to inherit the same interest in the estate * * * of the said Robert A. Moore, in the same manner as if she were the daughter and natural heir of the said Robert A. Moore." *Held*, the plaintiff was not thereby given any rights of inheritance in or to the estate of the wife of Robert A. Moore.

*Error to the District Court of Boulder County.*

Mr. CHAS. M. CAMPBELL, for plaintiff in error.

Mr. GEORGE ROGERS, Mr. O. E. JACKSON and Mr. GEORGE F. DUNKLEE, for defendants in error.

BISSELL, J., delivered the opinion of the court.

The right to inherit property in Colorado is wholly a matter of statute. The subject of the descent and distribution of estates is controlled by legislative enactments. To determine whether, in any given case, a person is entitled to a distributive share of the decedent's estate, the court must first consider the relationship of the claimant to the decedent, and then decide the force and effect of the statute on which the claimant's rights depend.

In 1869, Robert A. Moore and Mary C. were husband and wife, and residents of the county of Boulder. Prior to this date, Robert McFarland and his wife were neighbors and residents of the county until Robert was killed, in 1864, at Sand Creek. He died leaving two children, a boy, and a girl named Mary Adella. About the date first named, Moore and his wife took the girl, Mary Adella, into their family, and she became, so far as their acts and her treatment were concerned, their child by adoption, and lived with them until Robert Moore died, in March, 1886. At his death Robert left considerable property on which his widow administered, and of which, so far as we are able to gather from the record, Mary Adella received her proportion. Of this fact we are unable to speak definitely, but it is an unimportant consideration. During Robert's lifetime, and probably on his application, the Colorado legislature passed an act to change the name of Mary Adella McFarland to Mary Adella Moore, and by the second section of the act gave her rights of inheritance by the following specific provision :

SEC. 2. " That the said Mary Adella Moore shall be entitled to inherit the same interest in the estate, real and personal, of the said Robert A. Moore, in the same manner as

if she were the daughter and natural heir of the said Robert A. Moore."

There were other provisions in the act, but this is the only one which we must construe. The act took effect from the date of its passage, which was February 11, 1870. The child continued to live in Robert Moore's family, and to be known by his name until and after his death, and until the death of Mary C., his wife, at a later date. On the death of Mary C. she left a will which disposed of her property, giving it to certain named legatees, of whom Mary Adella was not one. The will was filed for probate, and, on the hearing, Mary Adella filed her claim asserting her heirship as the daughter of Mary C., and as such claimed an interest in the property. Her claim was rejected, and from the action of the lower court affirming the distribution of the property according to the provisions of the will, Mary Adella prosecutes this error.

The whole question is in a nutshell, and was clearly foreshadowed by the opening paragraph of the opinion. Eliminating all consideration of lineal or collateral descent or matters of sex, it was universally true at common law that the right of inheritance was dependent upon the blood relationship of the one who claimed to be heir of the deceased ancestor. It is impossible to give to the blood of a child, who is brought into the family by agreement or adoption, inheritable qualities. While the learned research of counsel has sought to find confirmation of a different principle by apt quotations from that masterful delineator of the passions of the human heart, who makes Orlando say:

> "I am more proud to be Sir Rowland's son,
> His youngest son,—and would not change that calling
> To be adopted heir to Frederick,"

he has apparently been unable to put his finger on any statute which would make Mary Adella the heir of Mrs. Moore. We must therefore conclude that in this state there was no act providing for the adoption of children prior to the enactment of 1876, which is found in the General Statutes of

1883, chapter I. At the time, then, of the passage of the act first referred to, there was no law in force in Colorado which provided for the adoption of children. The only other statutes bearing on this subject are the general statutes of descent and distribution. It must be conceded the claimant did not bring herself by description or proof within the terms of those general enactments. It therefore follows Mary Adella was not the heir of Mary C. Moore, either by reason of any adoptive act on the part of Mary, or by virtue of any general statute regulating the distribution of the estates of decedents. Thus far the case is clearly brought within the scope of the authorities which hold that, to establish heirship under acts providing for the adoption of children, the enactments must be looked to to ascertain the rights of the claimant. *Furgeson v. Jones*, 17 Ore. 204; *Ex parte Clark*, 87 Cal. 638; *Shearer et al. v. Weaver et al.*, 56 Iowa, 578; *Tyler et al. v. Reynolds*, 53 Iowa, 146; *In re Stevens*, 83 Cal. 322.

This doctrine has been carried in other cases to a still greater limit than that expressed in these decisions, which only concern the general right of adoption and the general right of the adopted child where the procedure is had under statutes expressly providing for the transmission to an adopted child of the right of inheritance. Some of the cases clearly hold a child may be adopted by one parent and not by another. The rights thus acquired would be simply rights in the estate of the adopting parent, and would leave the right of inheritance as to the nonadopting parent wholly unaffected by the act of adoption. These cases are equally conclusive on the proposition that where the adoption is under the statute of one state, and the parents ultimately remove to another whose statutes of descent and distribution are dissimilar, the child can acquire no right in property which descends and is to be distributed according to the law in force in the place of the newly acquired residence. They likewise go so far as to hold that the right of inheritance only extends to the property of the parents who may die leaving property, and gives to the blood of the adopted child no such inherit-

able quality as to make the child a sister or a brother of the children of the deceased parents, with the ordinary right of inheritance which would proceed from that relationship. The right of inheritance in such cases is fixed solely by the act itself. *The Estate of Sunderland*, 60 Iowa, 732; *Schafer v. Eneu*, 54 Pa. St. 304; *Commonwealth v. Nancrede*, 32 Pa. St. 389; *Keegan v. Geraghty et al.*, 101 Ill. 26; *Barnhizel et ux. v. Ferrell*, 47 Ind. 335; *Reinders v. Koppelmann*, 68 Mo. 482.

Under these well settled principles, it only remains to construe the act of the legislature of 1870, which undertook to give to Mary Adella certain rights as the adopted child of Robert A. Moore. A recurrence to the provisions of that act unmistakably shows that the right of inheritance which the legislature gave to Mary Adella was the right to inherit from Robert A. Moore, and as the daughter and natural heir of Robert. There was no attempt to make her the natural heir of Mary, the wife, or to give her any inheritable rights as her daughter. We cannot extend the act. She was thereby made the daughter and heir of Robert, but she was not thereby made either the heir or the daughter of Mary, or given any rights of heirship as such. It therefore follows that she was not entitled to any distributive share of Mary's estate. Mrs. Moore died leaving a will which disposed of her property, and did not name Mary Adella as a legatee. She took nothing by the terms of the will. She was without inheritable blood, and her claim was correctly adjudged against her.

The judgment of the court below accorded with the law, and will accordingly be affirmed.

*Affirmed.*